SÁNCHEZ ET AL., PLAINTIFFS AND APPELLANTS, *v.* VADI ET AL., DEFENDANTS AND APPELLEES.

Appeal from the District Court of Mayagüez in an Action of Intervention.

No. 1608.—Decided July 13, 1917.

INTERVENTION—PURCHASE BY FATHER FOR SON—MINOR—ORIGIN OF PURCHASE MONEY—PRIVATE PROPERTY.—In an action of intervention in ownership of real property brought by a son praying for judgment declaring that the attached property belongs to him because his father acquired it for him while he was a minor, the son should not only allege, but must prove at the trial, the origin of the money invested in the purchase. If such proof is not presented it may be concluded that the acquired property belongs to the father and is not the private property of the son.

ID.—JUDGMENT—CANCELLATION OF RECORD—RECORD OF TITLE.—In an action of intervention in ownership the court, in rendering its judgment dismissing the complaint, may order, according to article 79 of the Mortgage Law, the cancellation in the registry of the record of the property in question in favor of the intervenor. Likewise, it may order that said property be recorded in the name of the person who is really the lawful owner of the same.

The facts are stated in the opinion.

*Messrs. Honoré & Iriarte* for the appellants.

*Messrs. Feliú & Alemañy* for the appellees.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is a case of intervention in ownership. A levy in execution of a certain judgment having been made upon an urban property as belonging to José Sánchez Gil, the plaintiffs alleged that they and not Sánchez Gil were the owners thereof. The plaintiffs brought their action against Luis Vadi, the plaintiff in whose favor the said judgment was rendered, against the marshal who made the levy and against Sánchez Gil. Only defendant Vadi answered and appeared at the trial. He denied the allegations of the plaintiffs and pleaded as new matter of defense that the contract under which the plaintiffs appear to have acquired the ownership of the house in question was simulated. The court held against the plaintiffs on the following findings of fact:

"I. That by a public instrument executed before Notary Rodolfo Ramírez Vigo of Mayagüez on March 25, 1909, and recorded in the registry of property of this district on April 7 of the same year, defendant José Sánchez Gil purchased from Juan Ramón Villafaña the following urban property: (Description).

"II. That it was recited in the said deed (Exhibit 'B' of the plaintiffs) that the purchase price of said property was paid to the vendor by said José Sánchez Gil prior to the execution of the deed; that 'the vendee José Sánchez Gil' might enter into possession of the said property without any other formality than the execution of the said deed; that the sale was contracted with the defendant Sánchez Gil and made to him for his then minor children, the plaintiffs herein.

"III. That this same property was acquired by Juan Ramón Villafaña from said José Sánchez Gil on the day before the said sale by the former to the latter by another public instrument executed before the same notary, which was also recorded in the registry of property on the same date, both sales having been made for the same price (Exhibit 'A' of the plaintiffs).

"IV. The plaintiffs introduced no evidence regarding the origin or source of the money with which the said purchase was made, although they alleged in their complaint that it was inherited by them from their mother, Carmen Aleguin, who acquired it as ganancial property during her wedlock with the said José Sánchez Gil.

Nor is there any evidence in regard to the allegation made in their complaint to the effect that they have enjoyed the usufruct of the property under the administration of their said father, José Sánchez Gil, defendant herein.

"V. The court finds that the said described property was levied on by the marshal of this court, Nestor Gregory, under a writ of execution issued in Case No. 5098, which was also prosecuted in this court by Luis Vadi against José Sánchez Gil, to satisfy the judgment rendered therein, and that the said marshal advertised the said property for sale at public auction.

"VI. In such circumstances and considering the pleadings of the plaintiffs and of defendant Luis Vadi, the only defendant who answered the complaint, and further considering the evidence as a whole, the court reaches the conclusion that the money with which the property in controversy was acquired for the plaintiffs belonged to their father, defendant José Sánchez Gil, and that therefore the purchase was made with his funds."

The plaintiffs took the present appeal, claiming that the court had committed the following four errors: (1) In holding that the property in question had always belonged to Sánchez Gil and not to the plaintiffs; (2) in ordering the cancellation of the record in the registry in the names of the plaintiffs; (3) in ordering a new record to be entered in the name of Sánchez Gil, and (4) in imposing upon the plaintiffs the costs, disbursements and attorney fees.

It should be observed that the only data we have for deciding this appeal are the pleadings of the parties and the judgment of the court. The evidence examined has not been brought up to this court. Having made this observation, we will proceed to consider the errors assigned.

1. It was alleged in the complaint that the money with which the plaintiffs purchased the house came from their maternal inheritance. The plaintiffs, with the exception of one who was emancipated by marriage, are minors and the purchase was effected under the conditions set forth in Clause II of the findings of fact of the district court. The father appears as the purchaser for his children. In these circumstances it was incumbent upon the plaintiffs not only

to allege but to prove at the trial—which they did not do, according to the trial court—the origin of the money with which the purchase was made.

The law applicable to this matter is contained in sections 225, 226 and 227 of the Civil Code, which are the same as articles 160, 161 and 162 of the Spanish Civil Code. In commenting on the latter Manresa says:

"From the wording of the three articles on which we are commenting it is deduced that, unlike our old law which is derived from the Roman law, they do not refer to the person through whom the property is acquired, but principally to the origin of the acquisition, and when, for instance, a contract of purchase and sale is involved, it is indispensable to know whence proceeds the money paid for the property, as the rights of the child vary considerably according to whether the money belongs to the parents, or is acquired by his own labor, or was bequeathed to him by a third person. If these elements are lacking, what course should be pursued? Our jurisprudence, particularly the decision of January 14, 1861, has established 'that property purchased by an unemancipated child cannot be deemed his separate property unless he prove that he earned the purchase price by his own industry or acquired it by some of the other means prescribed by law.' Therefore, generalizing this principle, in order that the right of a child to property acquired by him may be recognized he must show, in case of litigation, that he is entitled to such right." II Manresa, Spanish Civ. Code, 34.

The judgment of the Supreme Court of Spain cited by Manresa was based on the following facts: José Pajares owed Manuel Rodríguez a certain sum of money and conveyed to him two houses and an orchard in settlement. On the next day Rodríguez executed another instrument, stating that he had accepted the said sale from and in the name of Felipe Pajares, a son of the vendor, who had paid him the amount due from his father with private funds and money acquired by his labor, of which he could dispose. An execution issued against José Pajares in an action brought by Ramona Sánchez and others, and the houses and orchard

were advertised for sale as belonging to José Pajares. Thereupon Felipe Pajares, the son, brought an action of intervention based upon the deeds referred to. The Supreme Court affirmed the judgment dismissing the action of intervention on the following ground:

"Considering that the present appeal is based upon the violation of Law V, Title XVII, *Partida* 4, which defines private capital, and the plaintiff having failed to produce any evidence which the trial court could consider regarding the acquisition of the purchase price of the two houses and the orchard in question by industry, by manual labor or by any of the other means prescribed by the said law, the court has not violated the said statute by dismissing the action of intervention." VI Civ. Jur. 28–29.

In support of their contention the appellants cite the decision of this court of November 28, 1917, in the case of *Fuentes* v. *Registrar of Caguas*, 24 P. R. R. 579, but the said decision prejudices rather than aids them. This court said:

"A purchase made by a parent as the representative of a child under *patria potestas* may be compared to a purchase made by an agent in the name of his principal, and as the agent in making a purchase for his principal is not required to show that the money employed for that purpose belongs to the latter, neither can the father who makes a purchase in the name of his child be required to show that the money belongs to the child. It is only in case of litigation regarding the validity of the purchase that the evidence prematurely required by the registrar can be exacted."

And it is a case of such litigation that is involved herein; therefore it is necessary to prove the origin of the money employed in the purchase. If such evidence is lacking, it may be assumed, as was correctly concluded by the trial court in this case, that the property acquired belongs to the father and not to the son independently. Besides, the court, as stated in the sixth finding of fact, held that, considering the evidence as a whole, the money belonged to the father and we have already said that the said evidence has not been submitted by the appellants to this court.

Out of consideration for the appellants we have given the foregoing attention to the first ground of appeal, for no statement of the case having been submitted, it would have been sufficient to say that the weighing of the evidence by the trial court could not be discussed on appeal and that we had to accept it as a basis for deciding the questions of law involved in the suit.

2. What was the fundamental question submitted by the intervenors to the district court? That relating to the ownership of the property. This had been levied on at the instance of defendant Vadi as belonging to defendant Sánchez Gil. The plaintiffs did not prove to the satisfaction of the court that they were the owners. On the contrary, the court held that Sánchez Gil was the real owner. From the documents submitted to the court it appeared that the property was recorded in the registry in the name of the plaintiffs. After holding that the property did not belong to the plaintiffs, should the court have allowed a record contrary to its holding to remain in the registry? It should be observed that the cancellation of the record existing in the names of the intervenors was prayed for by defendant Vadi in his answer. The issue was clearly raised at the earliest opportunity.

Title IV of the Mortgage Law treats of the cancellation of records and of cautionary notices. When a record is made it comes under the protection of the law and can be extinguished only by the means prescribed by law. One of these means is by cancellation, which may be prayed for and should be ordered in a case, among others provided for by article 79 of the Mortgage Law, in which the recorded right is completely extinguished.

Was the right of the plaintiffs to the property recorded in their names in the registry completely extinguished by the judgment rendered in the action of intervention? Decidedly. Then the court, according to law, was empowered to order the cancellation prayed for by defendant Vadi.

Let us see what the commentators Galindo and Escosura (Vol. III, p. 67) say in regard to this question.

"In order to obtain judgment, article 83 of the Mortgage Law provides that an ordinary action must be brought against the creditor (see judgment of March 20, 1873), and based on the text of this article some are of the opinion that the judgment rendered in the action of intervention in ownership in favor of the defendant is not a sufficient title for the cancellation of the record made in the name of the plaintiff; but the Directorate, guided by the spirit of the Royal Decree of May 20, 1880, and bearing in mind that the judgment has the force of law in the particular case in which it is rendered, held on November 21, 1881, that the cancellation denied by the registrar should be made."

We transcribe below the conclusions and dispositive part of the decision cited by Galindo:

"Considering that the question in this appeal is whether the record of ownership of Jacoba Vidal may be canceled by virtue of the judgment rendered in the action of intervention in ownership brought by her and the property be recorded later in favor of the purchaser Villar de Francos;

"Considering that the said judgment constitutes a good title of extinguishment of the rights of Jacoba Vidal to the properties levied on, as is proved by the fact that the action of intervention is a declaratory action which carries with it the presumption of *res judicata* and by the fact that after judgment in favor of the defendant execution issued and the properties claimed by the said Jacoba Vidal were sold;

"Considering that the object of the records in the registry is to give publicity to the civil rights set out therein, from which it is inferred that when such rights are extinguished by a judgment the said records should necessarily become ineffective inasmuch as they derive their force and origin from the said rights;

"Considering that this doctrine is confirmed by the decision of February 8, 1877, and. by the basic principles of the Royal Decree of May 20, 1880, because if the consent of the persons interested in a cancellation can be dispensed with when the same law declares that the recorded rights have become extinguished, this rule must also apply when the extinguishment is the result of a judgment, not only because the sanctity of *res judicata* is a legislative provision,

but also because a judgment has the force of law in the particular case in which it is rendered;

"Considering that the provision of the third paragraph of article 83 of the Mortgage Law is not opposed to this doctrine, inasmuch as the said law is based on the assumption that the consent of the interested parties is necessary, whereas in the case before us such consent is unnecessary because the person appearing as the owner was divested of her right by a judgment sufficient of itself for the cancellation according to article 82 of the said Mortgage Law;

"Considering that if, notwithstanding the action of intervention already disposed of, another action had to be brought now against Jacoba Vidal in order to obtain the cancellation of the record of ownership entered in her name, unnecessary expenses and delays would result, inasmuch as at most the only question for consideration would be that regarding the said right of ownership which was definitely decided by the first judgment of the court;

"Considering that, according to article 20 of the Mortgage Law, in order to record a title conveying ownership, the right of the person conveying it must appear of record, wherefore even after the cancellation of the record in the name of Jacoba Vidal the properties could not be recorded in the name of appellant Villar de Francos unless the right of Antonio Rosendo be recorded previously or a final judgment be obtained in the corresponding action;

"This General Directorate, reversing the order appealed from, is of the opinion that the record of ownership in the name of Jacoba Vidal should be canceled upon presentation of a certificate of the judgment rendered in the action of intervention, but that the conveyance to Gabriel Villar de Francos can not be recorded until the properties are recorded in the name of Antonio Rosendo, according to article 20 of the Mortgage Law."

3. If the court was authorized to order the cancellation it follows logically that it was also authorized to order a new record in the name of the person shown to be the real owner. The whole matter was before the court and it was its province and duty to dispose of it wholly by its judgment.

It has been contended by the appellants that the court could not give judgment in the terms to which we have just referred unless the vendor of the house in question were made a party to the suit. This, in our opinion, was not necessary. Juan Ramón Villafaña sold the property to Sánchez

Gil, who stated in the deed that he purchased the same for his children. The sale of itself was complete. The judgment rendered in no way affects the rights of Villafaña. The price of the sale was received by him. Nothing was left pending. The contract was not based upon any personal consideration affecting the purchaser.

4. This is a case in which defendant Vadi prayed that the costs, expenses and attorney fees be imposed, as under the law they might be, upon the plaintiffs. It has not been shown that the court abused its discretional power. The evidence examined at the trial is not before us and under such circumstances we can not and should not disturb the conclusion reached by the district court.

.The judgment appealed from should be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.